The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUCHER AEROSPACE CORPORATION,

    Plaintiff,

v.

BOMBARDIER AEROSPACE CORPORATION,

    Defendant.

NO. 22-cv-1238

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.    INTRODUCTION

Plaintiff Bucher Aerospace Corporation ("Bucher") brings this lawsuit against Defendant Bombardier Aerospace Corporation ("Bombardier") alleging claims for breach of contract, unjust enrichment, quantum meruit, promissory estoppel, and negligent misrepresentation. Bombardier moves for judgment on the pleadings, to dismiss with prejudice all claims asserted by Bucher in its amended complaint. Mot., ECF No. 45. Having reviewed the motion, opposition, and reply thereto, the record of the case, and the relevant legal authority, the Court will grant in part and deny in part Defendant's motion. The reasoning for the Court's decision follows.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 1

## II.     BACKGROUND

Bucher specializes in the design, manufacture, and delivery of custom interior aircraft components. Bombardier is an aircraft manufacturer that has contracted with Bucher on numerous projects to customize interior components for its aircraft. Relevant here, in 2016, Bucher and Bombardier entered into a contract for the design and development of a custom sliding door for Bombardier's Global 5000 and 6000 aircraft. Am. Compl. ¶¶ 34-38, ECF No. 26; Ex. C, ECF No. 26-3; Ex. D, ECF No. 26-4. By December 2017, Bucher completed the design and provided a preliminary unit for evaluation and flight test. Am. Compl. ¶¶ 53-54. The design was validated with only minor changes identified for incorporation into the design. *Id.* ¶¶ 18, 55.

In November 2018, Bombardier gave Bucher notice that it was cancelling the project. Am. Compl. ¶¶ 61-62; Ex. F, ECF No. 26-6. At that time, according to Bombardier's records, a milestone payment of $60,000 USD was outstanding, which it agreed to pay upon invoicing. *Id.* ¶ 61. Bucher alleges that after cancellation, Bombardier made no further payments. *Id.* ¶ 63. Bucher alleges that Bombardier subsequently reengaged and continued the development of the sliding door, asked Bucher to build a new test unit and perform updated tests and analysis to confirm the design, which incurred more engineering hours to be expended as well as significant costs that were not reimbursed. *Id.* ¶¶ 64-69. Although Bombardier acknowledged that the tests were successful, it never authorized production of units to begin. *Id.* ¶ 65. Bucher alleges that Bombardier failed to pay cancellation costs according to the terms and conditions of the parties' contract. *Id.* ¶¶ 73-74.

Bucher asserts five causes of action:

- Count I: Breach of Contract
- Count II: Unjust Enrichment

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 2

- Count III: Quantum Meruit

- Count IV: Promissory Estoppel

- Count V: Negligent Misrepresentation

*Id.* ¶¶ 80-130. Bombardier moved to dismiss the complaint, which Bucher opposed, suggesting that the Court did not have all relevant documents before it. The Court struck the dismissal motion and instructed Bucher to file an amended complaint "that fully sets forth the factual allegations of its claims and includes all relevant documents that comprise the parties' agreement." Order 3, ECF No. 25. By its pending motion, Bombardier seeks dismissal of Bucher's claims with prejudice, arguing that Bucher, as a matter of law, cannot maintain a breach of contract claim nor its alternative claims.

### III. LEGAL STANDARD

A motion for judgment on the pleadings is authorized under Federal Rule of Civil Procedure 12(c), which provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). A motion for judgment on the pleadings brought by a defendant is functionally identical to one under Rule 12(b)(6), and the same standard of review "applies to motions brought under either rule." *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

Accordingly, whether brought under Rule 12(b)(6) or Rule 12(c), the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the non-moving party's favor, the complaint has stated "a claim to relief that is

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 3

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In doing so, the Court is limited to reviewing materials that are submitted with, and attached to, the complaint; matters appropriate for judicial notice; and unattached evidence on which the complaint "necessarily relies," provided the authenticity of the document is not questioned. *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020). If such exhibits conflict with allegations in the complaint, the Court need not accept those allegations as true. *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citing cases).

## IV.    DISCUSSION

The parties agree that a contract was formed by Bombardier's acceptance of Bucher's Proposal BAQ61537 ("Offer"), which was submitted in response to Bombardier's request for proposal. Am. Compl. ¶ 16; Mot. 1-2, 5, 11; Opp'n 1, ECF No. 46; *see also* Offer, ECF No. 26-3; Acceptance, ECF No. 26-4. Bucher alleges that Bombardier agreed to pay cancellation costs if it terminated the sliding door project, governed by the terms in Bucher's Standard Terms and Conditions of Sale, referred to in the Offer. Am. Compl. ¶¶ 41-43; T&C, ECF No. 26-5. Bombardier contends that Bucher has only identified one contractual provision allegedly breached—the cancellation provision. Mot. 9-10. Bombardier asserts that the issuance of a Purchase Order is a condition precedent to the obligation to pay cancellation fees, and Bucher's failure to identify any specific unpaid Purchase Orders is lethal to its claim that Bombardier breached the contract. *Id.*; Reply 2, ECF No. 48. Bombardier also argues that Bucher's alternative claims are improper because the parties had a valid express contract. Mot. 12. Bucher responds that Bombardier "attempts to escape its obligation to pay [Bucher] for contractually established cancellation costs by

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 4

misconstruing the parties' contract and the facts of this case." Opp'n 1. The Court shall address each argument in turn.

### A. Breach of Contract (Count I)

Contract disputes are governed by state law, and the parties both cite Washington law. *See, e.g.*, Mot. 9; Opp'n 8-9. "A contract . . . should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions." *Colo. Structures, Inc. v. Ins. Co. of Washington*, 161 Wn. 2d 577, 588 (2007). Washington courts interpret contracts based on the plain meaning of their provisions, and "[t]he parties' subjective intent is irrelevant if [the court] can ascertain their intent from the words in the agreement." *Martin v. Smith*, 192 Wn. App. 527, 532 (2016). The court "give[s] words their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* Any ambiguity in the contract is construed against the party that drafted it. *Petersen-Gonzales v. Garcia*, 120 Wn. App. 624, 632 (2004) (citing cases); *Cont'l Ins. Co. v. PACCAR, Inc.*, 96 Wn. 2d 160, 167 (1981) (noting drafter was in better position to prevent ambiguity). A provision is ambiguous if it is fairly susceptible to more than one reasonable interpretation. *GMAC Corp. v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135 (2014).

Therefore, the Court shall begin by reviewing the pertinent language of the contract, which is comprised of the Offer, the Terms and Conditions of Sales, and the Purchase Orders. *See* T&C § 18 ("The Purchase Agreement with the attachments hereto and the respective Purchase Orders shall constitute the entire agreement of the Buyer and Seller."); T&C Definitions ("'Purchase Agreement' shall mean this 'Terms and Conditions' (hereinafter referred to as 'T&C') together with the applicable Offer and/or the applicable Individual Agreement.").

The Offer includes pricing for non-recurring charges and recurring charges. Offer § 2.1. Non-recurring charges include engineering/design and testing totaling $480,685.00, which includes eight preliminary units and the scope of work described in the proposal. *Id.* The agreement provides for additional requirements and customer changes:

> If Buyer requests changes to the product (including but not limited to changes in material, styling or design), this change request shall be subject of a Master Change Proposal (MCP). Seller shall issue the MCP with cost, weight and time impact to Buyer in an appropriate time. Seller and Buyer shall agree upon the change(s) to be implemented. Seller shall execute the change(s) only after receipt of the MCP signed by Buyer. A purchase Order is required for billing purposes.

*Id.* § 6; *see also* Offer § 2.6 ("Change Orders will be negotiated separately dependent on the scope of change via Master Change Proposal (MCP)."). Recurring charges for production units are derived on a "cost plus" formula, based on the expected quantities to be ordered. Offer § 2.1.2. The expected price per unit is firm for firm orders of the expected quantities by purchase order. *Id.* Recurring pricing is also subject to adjustment to be handled by change orders. *Id.*

The Offer includes a cancellation clause:

> Cancellations will be governed by BUCHER "Standard Terms & Conditions of Sale" (BA180000-13, latest revision).
>
> If CUSTOMER order is terminated prior to completion, CUSTOMER will be responsible for all cost incurred with respect to the order of labor, materials and subcontracted services together with all allocated overheads.

*Id.* § 2.7 Cancellation Clause. CUSTOMER is defined as Bombardier Aerospace. *Id.* at § 1.1. The Bucher Standard Terms and Conditions states: "In the event Buyer terminates a Purchase Order/Purchase Orders and Buyer has not paid the outstanding claims regarding the non-recurring costs of the Seller, Buyer shall be liable to reimburse Seller the outstanding costs as single payment

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 6

in full." T&C § 18 Termination. "Buyer" means "customer," i.e., Bombardier, and "Seller" means Bucher *Id.* at 1, § Definitions. "Purchase Order" means "the purchase order issued by Buyer [Bombardier] and confirmed by Seller [Bucher]." *Id.*

The T&C also contains an integration clause:

> The Purchase Agreement with the attachments hereto and the respective Purchase Orders shall constitute the entire agreement of the Buyer and Seller.
>
> The Purchase Agreement shall not be varied in terms or amended except by an instrument in writing explicitly named as an amendment to the Purchase Agreement and signed by duly authorized representatives of the parties.

*Id.* §§ 36, 37.

Bombardier argues that the cancellation provision refers only to Bombardier terminating a Purchase Order, and "Bucher does not allege that Bombardier cancelled any Purchase Order or that Bombardier failed to pay any Purchase Order it issued." Mot. 9-10. Bombardier declares it does not have to pay for work it never ordered. *Id.* at 2. According to Bombardier, its November 22, 2018 letter provided formal notice of Bombardier's decision to cancel the project, thus terminating the agreement. *Id.* at 7; Reply 3; ECF No. 26-6 ("[T]his letter is to provide formal notice of Bombardier's decision to discontinue the development of the [Global 5000/6000 bulkhead and sliding door mechanism] effective immediately.").

The Court agrees with Bombardier that the plain language of the parties' contract refers to cancellation of purchase orders. Am. Compl. ¶¶ 60-63.[1] The Court also agrees that Bucher's attempt

---

[1] Bucher also attached numerous MCPs and Purchase Orders to its response, not all of which contain a "paid" notation. ECF Nos. 47-1, 47-1. These documents are properly considered under this motion since Bombardier has not questioned their authenticity.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 7

1  to create a distinction between "CUSTOMER order" and "Purchase Order" and substitute
2  "CUSTOMER order" for "sliding door project," *see* Opp'n 2-4, is inconsistent with the language
3  of the contract and its definitions of terms. The contract provided for a fixed fee for non-recurring
4  charges for the engineering and design work, with additional work to be managed and invoiced by
5  agreed purchase orders. Further, the contract does not include a promise by Bombardier to purchase
6  sliding doors as Bucher alleges.

7  Nonetheless, accepting Bucher's factual allegations as true, where they are not in conflict
8  with the provided documentation, there remain issues of material fact in dispute as to whether
9  Bombardier owes cancellation costs for cancelled purchase orders under the contract. Bucher
10 sufficiently alleges that purchase orders under the contract remain unpaid. After discovery, with a
11 more complete record before the Court, the claim may be subject to summary judgment, but
12 Bombardier's motion for judgment on the pleadings must be denied.  The Court notes, however,
13 that the motion is denied solely for purposes of Bucher's substantiation of its claims on unpaid
14 purchase orders. Bucher's contentions as to the interpretation of the contract are rejected by the
15 Court.

16 **B. Quasi-contract claims (Counts II-IV)**

17 The Court does not agree with Bombardier's argument that because the contract is
18 integrated, the quasi-contract and tort claims are "not allowed."  *See* Mot. 2, 12-13 (citing cases
19 which state that where a valid contract exists, a party cannot seek additional compensation on the
20 same subject matter). As Bombardier points out, unjust enrichment and quantum meruit are
21 equitable, quasi-contractual remedies that are inapplicable to a written contract. *See McDonald v.*
22 *Hayner*, 43 Wash. App. 81, 84 (1996) ("A party to an express contract is bound by the provisions

23
24 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT
   ON THE PLEADINGS
25 - 8

of that contract, and may not disregard the same and bring an action on an implied contract relating to the same subject matter, in contravention of the express contract."). But this principle does not apply where the express contract does not explicitly cover the specific subject matter for which an implied agreement is sought. *Auburn Mech., Inc. v. Lydig Const., Inc.*, 89 Wn. App. 893, 901 (1998).

Although Bucher may have inartfully pleaded its claims, it has plausibly alleged that after termination of the contract, Bombardier requested engineering and design work that Bucher provided. *See* Am. Compl. ¶¶ 64-72 (alleging that Bombardier "subsequently reengaged and continued the development of the sliding door[,] . . . asked Bucher to build a new test unit and perform updated tests and analysis[, and] . . . did not pay for design work performed after November 22, 2018" including 114 hours in 2019, 663 hours in 2020, and 1024 hours in 2021). This work is not the subject of the contract, as Bombardier has so clearly asserted, since it was not the subject of a "purchase order issued by [Bombardier] and confirmed by [Bucher]." *See* Mot. 5 (quoting the Offer and T&C). Payment for this post-termination work is not due to Bucher under the contract's cancellation clause since it was not the subject of purchase orders, but Bucher has pleaded that it reasonably relied on Bombardier's promises, based on the parties' longstanding business relationship and prior dealings.

A plausible unjust enrichment claim under Washington law requires "(1) a benefit conferred on one party by another; (2) appreciation and knowledge of the benefit by the party receiving it; and (3) acceptance of the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value." *Pengbo Xiao v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1190 (W.D. Wash. 2019). "Quantum meruit is the method of recovering the reasonable

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 9

value of services provided under a contract implied in fact." *Mastaba, Inc. v. Lamb Weston Sales, Inc.*, 23 F. Supp. 3d 1283, 1296 (E.D. Wash. 2014) (citation omitted). "The elements of an implied in fact contract are 1) the defendant requests work, 2) the plaintiff expects payment for the work, and 3) the defendant knows or should know the plaintiff expects payment for the work." *Id.* And, the elements of promissory estoppel are: "(1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *Clipse v. Commercial Driver Servs., Inc.*, 189 Wn. App. 776, 796 (2015) (citations omitted). Accepting Bucher's allegations as true and drawing all reasonable inferences in its favor, the complaint has stated facially plausible quasi-contract claims for the work that Bucher performed at Bombardier's request after the contractual agreement ended, but not for work performed under a purchase order.

**C. Negligent Misrepresentation (Count V)**

Finally, Bucher also asserts a claim of negligent misrepresentation based on Bombardier's initial representation that the project was viable, and then later cancelling the project because it was not viable. A negligent misrepresentation claim requires that: "(1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages." *Ross v. Kirner*, 162 Wash.2d 493, 499 (2007)). Under Federal Rule of Civil Procedure 9(b), all circumstances constituting fraud or

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 10

1  mistake must be stated with particularity. *See also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."). Bucher's allegations are insufficient to satisfy this heightened pleading standard and plausibly allege this cause of action.

Bombardier argues that Bucher's alleged misrepresentation—a viable project—is not actionable because it is a future-oriented statement, and the claim is barred by the independent duty doctrine. Mot. 14. Bombardier contends that "Bucher has not, and cannot, allege that Bombardier had an independent duty to Bucher to accurately assess the viability of a project." *Id.* at 15. In response, Bucher asserts that Bombardier owed it a "duty to use ordinary care in obtaining or communicating information during a transaction." Opp'n 15 (citing *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash. 2d 380, 389 (2010)). Bucher states that "[i]f the project was not viable to Bombardier, and Bombardier negligently represented to Bucher otherwise, then Bombardier caused Bucher to hazardously expend and invest significant time, money, and resources for a project that Bombardier could never complete." *Id.*

"Economic losses are sometimes recoverable in tort, even if they arise from contractual relationships." *Eastwood*, 170 Wn. 2d at 388. The "independent duty doctrine" allows for a plaintiff to make a claim in tort, regardless of whether there is a contract, "but only to the extent the duty to not commit negligent misrepresentation is independent of the contract." *Jackowski v. Borchelt*, 174 Wash. 2d 720, 738 (2012). "When no independent tort duty exists, tort does not provide a remedy." *Eastwood*, 170 Wn. 2d at 389. Under the circumstances present here, Bombardier was under no duty independent of the contract to assess or assure the ongoing viability of the project. The

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 11

contract itself included terms for regular reviews, testing, quality requirements, and inspections, all of which impact ongoing viability. Further, as noted by Bombardier, the alleged misrepresentation was an expectation of viability about an upcoming project that was provided to all bidders, not a statement of existing fact. "A promise of future performance is not an actionable statement." *Colorado Tire Corp. v. Moraglis S.A.*, 22 Wn. App. 2d 1063 (2022).

Accordingly, Bucher's negligent misrepresentation claim will be dismissed with prejudice.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings, ECF No. 45 is granted in part and denied in part:

1. Judgment on the pleadings is denied as to Count I (Breach of Contract) insofar as there remain material disputes of fact as to whether there are unpaid purchase orders;

2. The motion is denied as to the quasi-contract claims, Counts II-IV, insofar as Bucher has plausibly alleged additional work was requested and performed post-termination of the express contract;

3. The motion is granted with regard to Count V (Negligent Misrepresentation), and Count V is dismissed with prejudice.

DATED this 10th day of July 2023.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

- 12